```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/28/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

AMERICAN INSURANCE COMPANY,

                           **Plaintiff,**                    **17-CV-5545 (SN)**

               -against-                                **OPINION & ORDER**

**ROBERT KARTHEISER, et al.,**

                           **Defendants.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff American Insurance Company ("AIC"), the subrogated insurance carrier of Albert M. Watson Photography ("Watson Photography'), sues Robert Kartheiser and Caroline Walther-Meade (together, "Defendants"), seeking compensation for payments made following water damage Defendants allegedly negligently caused to Watson Photography's property. Defendants move for summary judgment. ECF No. 48. Plaintiff opposes Defendants' motion and cross-moves for summary judgment. ECF No. 51. For the reasons below, Defendants' motion is GRANTED and Plaintiff's cross-motion is DENIED.

## BACKGROUND

The facts of the case are largely undisputed and are taken from (1) Defendants' Rule 56.1 statement, (ECF No. 48-2); (2) Plaintiff's Rule 56.1 statement (ECF No. 51-4); and (3) evidence submitted by both parties as part of their summary judgment briefing (see ECF Nos. 48, 51).[1]

Defendants own condominium unit 2A in the Grabler Building, at 44 Laight Street in New York, New York. ECF No. 48-2 at ¶ 1. Plaintiff's subrogor, Watson Photography, owns

---

[1] Citations to deposition transcripts are to the ECF page number.

unit 1A, which is located below Defendants' unit. ECF No. 48-2 at ¶ 2. On August 2, 2015, a flexible line connecting the building's water supply to a toilet in Defendants' unit ruptured, causing severe water damage to both Defendants' and Watson Photography's units. Id. at ¶¶ 3, 5.

      Defendants purchased unit 2A in 2011. At the time of closing, Defendants had not personally inspected the toilet or plumbing fixtures nor did they hire a professional to inspect the toilet or plumbing fixtures. ECF No. 48-8 at 28. Defendants did not ask the prior owner of the unit about flooding, leaking, or other issues with toilets in the condominium. Id. at 32. The rider to the purchase agreement for the Defendants' unit noted that previous damage to unit 2A from a leak originating in the unit above had been repaired before Defendants' purchase. Id. at 44–47. Indeed, on a number of occasions between 2011 and 2015, Defendants' unit incurred additional water damage caused by plumbing issues in other parts of the building—most notably, the units above 2A. Id. at 69–70. Other units in the Grabler Building had also sustained water damage resulting from miscellaneous plumbing issues. ECF No. 48-10 at 129.

      From the time they moved into the unit in 2011 until August 2, 2015, Defendants hired a plumber fewer than five times to address various household plumbing needs. Id. at 36–37, 80. Defendants never had a leak originating in their unit. Id. Defendants used the toilet—located in the master bathroom—"every day" and found it in working order. Id. at 57. Defendants personally made no repairs to the toilet. Id. at 55. At no time before August 2, 2015, had a plumber performing work in Defendants' unit warned Defendants about the need to replace a flexible water supply line in the unit. ECF No. 48-9 at 146. A plumber who replaced the flapper in the toilet in Defendants' master bathroom in May 2015 gave no indication that the flexible water supply line to that toilet needed replacement. ECF No. 48-10 at 254–55. The building manager, the superintendent, and the condominium board for the building had also never

suggested or directed Defendants to install a water flow restriction device for any of the water supply lines to Defendants' unit. Id. at 147. Defendants had never installed a water shutoff device in their unit and believed that in case of a plumbing emergency, the building's doorman would be able to shut off their unit's water supply. ECF No. 48-9 at 180–81.

On August 2, 2015, a flexible water supply line in Defendants' unit—which had been in place at the time Defendants purchased the unit—ruptured, causing significant amounts of water to flow into Defendants' unit and down into Watson Photography's unit, extensively damaging both units. See ECF No. 48-2 at ¶¶ 3, 5–6. On August 6, 2015, Parkset Plumbing issued an invoice for work performed to remedy the rupture, explaining the cause of the leak was a "speedy supply nut cracked and leaking" on Defendants' toilet. ECF No. 48-9 at 84. Defendants' expert Paul Dreyer, a mechanical engineer, opined upon evaluating Defendants' flexible line that:

> the failure of the white plastic threaded nut at the toilet tank connection was due to a defective design and/or manufacture of the flexible line plastic nut, which did not have sufficient strength over an extended period of time to safely resist the water pressure and normally expected installation side-load forces. The plastic nut simply split into two pieces, causing the water leak and related damage. There was no evidence of installation defects.

ECF No. 55-7 at 3. Plaintiff's expert, Leonard Parkin, did not reach a conclusion as to the cause of the rupture but stated that the condition of the rubber gasket of the supply line likely experienced "degradation over a period of time." ECF No. 48-15 at 7. Parkin also opined that had Defendants closed the supply line to their unit before the leak, or installed an automatic water shutoff device before the leak, the leak would not have occurred. Id.

On July 20, 2017, Plaintiff commenced this action. On June 28, 2018, the parties consented to my jurisdiction for all purposes under 28 U.S.C. § 636(c). Defendants

moved for summary judgment on November 27, 2019, and Plaintiff cross-moved for summary judgment on January 11, 2020.

## DISCUSSION

### I. Legal Standard

#### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "If the movant makes this showing . . . the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). On cross-motions for summary judgment, each moving party has the burden of demonstrating the absence of a genuine issue of material fact. Rosales v. Vieira Sardinha Realty, LLC, 13-cv-06980 (TPG), 2017 WL 4157365, at *3 (S.D.N.Y. Sept. 18, 2017); see also Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) ("[E]ven when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party . . . Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." (citation omitted)). In attempting to meet their burdens, the parties "cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry [their respective] burden[s] on summary judgment." Goord, 467 F.3d at 273.

**B. Choice of Law**

Plaintiff invokes the Court's diversity jurisdiction pursuant 28 U.S.C. § 1332. Accordingly, the Court applies New York law because New York is the state in which the alleged tort occurred. See Velez v. Sebco Laundry Sys., Inc., 178 F. Supp. 2d 336, 339 (S.D.N.Y. 2001) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). The parties' agreement that New York law governs this dispute confirms that New York law applies. See Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." (omission in original) (quoting Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000))).

**II.     Analysis**

**A. Defendant's Motion for Summary Judgment**

Defendants move for summary judgment on the ground that Plaintiff has offered insufficient evidence to support a claim of negligence. Plaintiff argues that summary judgment in favor of the Defendants is precluded by application of the *res ipsa loquitur* doctrine.

**1. Consolidation of the Amended Complaint's Four Counts**

As a threshold matter, the Court agrees in part with Defendants' assertion that the Amended Complaint's causes of action are properly analyzed as a single negligence claim. See ECF No. 48-3 at 3–4. The Amended Complaint's first cause of action is untitled but alleges that the damages at the center of this action were caused by Defendants' "negligent, willful, wanton, reckless, and grossly negligent act, or omissions of the Defendant(s) [*sic*] in failing to properly install, maintain, inspect, and repair the water line connected to a toilet resulting in water damage to the property of plaintiff's insured." ECF No. 7 at 3. The second cause of action is titled "Negligence" and recites the basic allegations of the first cause of action in addition to

5

referencing the doctrine of *res ipsa loquitur* to further support a claim of negligence. Accordingly, the Court analyzes counts one and two as a single claim for negligence. See <u>Ianotta v. Tishman Speyer Properties, Inc.</u>, 46 A.D.3d 297, 299 (1st Dep't 2007) (noting that *res ipsa loquitur* is not a separate theory of liability and addressing *res ipsa loquitur* as part of negligence claim).

The third cause of action is premised on Defendants' breach of the Grabler Building condominium bylaws. As Plaintiff has not established its ability to pursue an independent cause of action on this ground, I find that it is properly incorporated into the analysis of a claim for negligence.

Plaintiff's fourth cause of action, titled "Nuisance," states that "Defendants' various acts of negligence . . . created a private nuisance." It is true that where a plaintiff's nuisance claim arises solely from a plaintiff's claim of negligence, and the alleged elements of each are "so intertwined as to be practically inseparable," a plaintiff may only recover once. <u>70 Pinehurst Ave. LLC v. RPN Mgmt. Co.</u>, 123 A.D.3d 621, 622 (1st Dep't 2014). Here, Plaintiff's nuisance claim stems from the same factual basis as its negligence claim and seeks identical damages under each claim, but, as described below, the elements of a private nuisance tort differ from those of a claim of negligence. Accordingly, the Court analyzes count four separately under the law of nuisance but will not permit double-recovery under both claims of nuisance and negligence.

**2. Negligence**

To establish negligence under New York law, a plaintiff must prove: (1) a duty owed by the defendant(s) to the plaintiff; (2) a breach of that duty; and (3) injury to plaintiff proximately resulting therefrom. <u>Burden v. Wal-Mart Stores E., LP</u>, 17-cv-1289 (KMK), 2018 WL 4680025,

6

at *4 (S.D.N.Y. Sept. 28, 2018) (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006)). Under New York law, "landowners have a duty to maintain their property in a reasonably safe condition." St. Paul Fire & Marine Ins. Co. v. Tag 380, LLC, 05-cv-4917 (DC), 2007 WL 2872464, at *6 (S.D.N.Y. Sept. 27, 2007) (citing DiNunzio v. Ken-Jil Elec. Contractors, Inc., 473 F. Supp. 2d 485, 486 (S.D.N.Y. 2007)). "To establish a *prima facie* claim of negligence against a property owner stemming from a defective condition on the property, a plaintiff must show that the owner either created the condition or that he had actual or constructive notice of it." Id. (citing Greco v. Starbucks Coffee Co., 05-cv-7639 (CM), 2006 WL 1982761, at *3 (S.D.N.Y. July 14, 2006)).

The parties do not dispute that Defendants' flexible water supply line rupture caused the injury to Watson Photography's unit. And Plaintiff does not claim Defendants created or had actual notice of the specific condition causing the damage. Rather, Plaintiff's claim for negligence rests on the argument that Defendants had constructive notice of the likelihood their flexible water supply line would rupture based on previous similar plumbing issues in the building. As such, Defendants will be entitled to summary judgment unless a reasonable jury could find that they had constructive notice of the faulty flexible water supply line.

In order for a defendant to have constructive notice of a defect, it must be visible, apparent, and have existed for a sufficient length of time prior to the accident to permit the owner to discover and remedy it. DiNunzio, 473 F. Supp. 2d at 487 (internal quotations and citations omitted). Further, constructive notice must be of the particular condition at issue and not merely a general awareness of the existence of the dangerous condition. See Taylor v. United States, 121 F.3d 86, 90 (2d Cir. 1997) (citations omitted). Because "[c]onstructive notice of a particular condition is inextricably intertwined with the concept of foreseeability, "awareness of a general

dangerous condition is not enough to charge a defendant with constructive notice of the particular dangerous condition that caused an injury." Klein v. City & Cty. Paving Corp., 16-cv-2264 (NRB), 2018 WL 4265885, at *5 (S.D.N.Y. Sept. 5, 2018) (citing Taylor, 121 F.3d at 90).

Plaintiff submits no evidence of any complaints to Defendants about the flexible water supply line. Similarly, there is no evidence that Defendants ever experienced a leak or evidence of a leak from the flexible water supply line at issue. The parties agree that Defendants never had a professional inspection of the flexible water supply line for potential issues and never repaired or modified the supply line. The flexible supply line contained no tag or apparent information about its lifespan or installation date. The building's bylaws do not reference the mandatory use of leak prevention equipment (such as automatic water shutoffs) or the inspection of flexible water supply lines. Accordingly, there is no dispute that Defendants did not have constructive or actual notice based on their personal observations of the defect or information provided to them by plumbing professionals, the building's bylaws, or the building's management. Instead, Plaintiff argues constructive notice based on the idea that Defendants "were fully aware . . . that their building suffered severe risk of leaks from higher apartments into the apartments below, that the leaks happened on a regular basis in multiple units, effecting [sic] the units below," placing the Defendants on "actual notice of the great risk for water leaks within the plumbing system of the building." ECF No. 51-5 at 6, 11.

The numerous incidents of water damage to which Plaintiff points in support of its constructive notice argument involved various plumbing instrumentalities from units 3A, 3B and 4A in the Grabler Building. In September and October 2011, two leaks from the cold-water line supplying the kitchen faucet in 3A (the unit above Defendants') damaged Defendants' kitchen ceiling. See ECF No. 48-10 at 60–71, 74–75, 248–49. In July 2012, air conditioning units in 3A

leaked and damaged Defendants' unit. ECF No. 48-10 at 80–82, 249. In December 2012, a leak from 3B damaged Defendants' unit when a renovating plumber tested a new shower pan. See id. at 83–87, 249–50. In January 2013, Defendants' unit suffered extensive damage resulting from a leak originating in 4A—two stories above Defendants' unit—when a "pot filler" faucet failed. See id. at 95–96, 250–51. Finally, in May 2015, a "coupling connector," presumably part of the shower plumbing, leaked in unit 3A and damaged Defendant's unit. See id. at 101–08, 251–52. I find that the evidence of these miscellaneous plumbing issues in other units, without more, did not put Defendants on constructive notice that the flexible water supply line to their master bathroom toilet may have been deteriorating and needing repair or replacement. These instances were not similar enough in nature to one another or to the rupture in Defendants' flexible water supply line as to give Defendants constructive notice that their flexible water supply line would rupture. Furthermore, without constructive notice, Defendants could not have been required to take preventative measures (such as installing an automatic water shutoff) to prevent damage from a rupture.

For these reasons, Defendants are entitled to summary judgment on Plaintiff's negligence claim to the extent it is based on directly proving duty and breach.

### 3. *Res Ipsa Loquitur*

Plaintiff argues that even without direct proof of duty and breach, the doctrine of *res ipsa loquitur* applies and precludes summary judgment in favor of Defendants. *Res ipsa loquitur* is a doctrine that allows two elements of negligence, duty of care and breach, "to be inferred from the very nature of the accident, even without direct evidence of how any defendant behaved." Skidd v. JW Marriot Hotels & Resorts, 06-cv-1554 (DAB), 2010 WL 2834890, at *3 (S.D.N.Y. July 8,

2010). Under New York law, a case may be committed to the jury on the theory of *res ipsa loquitur* only if the plaintiff demonstrates that:

> (1) the event [causing damage] was of a kind which ordinarily does not occur in the absence of someone's negligence;
> (2) it was caused by an agency or instrumentality within the exclusive control of the defendant(s); and
> (3) it was not due to any voluntary action or contribution on the part of the plaintiff.

See Linwood v. Schindler Elevator Corp., 16-cv-1020 (LAK)(RWL), 2019 WL 5722110, at *9 (S.D.N.Y. Jan. 25, 2019) (citing Stone v. Courtyard Management Corp., 353 F.3d 155, 160 (2d Cir. 2003)), report and rec. adopted, Linwood v. Schindler Elevator Corp., Dkt. No. 97, (S.D.N.Y. Apr. 15, 2019). In other words, "[t]he doctrine permits a plaintiff to establish a *prima facie* case of negligence without proving elements usually necessary to state a negligence claim." Tag 380, LLC, 2007 WL 2872464, at * 5.

Even viewing the evidence most favorable to Plaintiff as the nonmovant and drawing all reasonable inferences in its favor, there is insufficient evidence to support the application of the *res ipsa loquitur* doctrine here. Assuming *arguendo* that the rupturing of a flexible water supply line is the type of event not ordinarily caused in the absence of negligence, Plaintiff has not established that the flexible water supply line was in Defendants' exclusive control. The exclusive control requirement does not mean that "the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door." Dermatossian v. New York City Transit Auth., 67 N.Y.2d 219, 227 (1986). The purpose is simply to eliminate within reason all explanations for the injury other than the defendant's negligence. Id. Ownership without installation, repair, or alteration does not necessarily establish exclusive control for *res ipsa loquitur* purposes. See Bunting v. Haynes, 104 A.D.3d 715, 716 (2nd Dep't 2013) (holding that because a staircase was installed

prior to a defendant's ownership of a property, and because it was never altered or repaired by defendant, defendant did not have exclusive control over it for application of *res ipsa loquitur*); Crosby v. Stone, 137 A.D.2d 785, 786 (2nd Dep't 1988) ("Where, as here, the defendants took control of the [instrumentality causing the harm] after the negligent act [negligent manufacture or negligent design] was committed there is simply no basis to conclude that they had exclusive control as defined for the purposes of *res ipsa loquitur*."). Here, there is no dispute that the flexible water line was installed before Defendants' ownership of the unit, and that Defendants did not make any alterations or repairs to it between the time they took ownership possession of the unit and the incident on August 2, 2015. Defendants' motion for summary judgment is therefore GRANTED as to Plaintiff's negligence claim.

### 3. Nuisance

To state a claim for private nuisance, "a plaintiff must allege: (1) an interference substantial in nature; (2) intentional or negligent in origin; (3) unreasonable in character; (4) with plaintiff's right to use and enjoy land; (5) caused by defendant's conduct in acting or failing to act." Town of Islip v. Datre, 245 F. Supp. 3d 397, 428 (E.D.N.Y. 2017) (internal quotation marks omitted). For the reasons above, Plaintiff fails as a matter of law to demonstrate its entitlement to summary judgment on its negligence claim, meaning that Plaintiff cannot meet the second prong of the test for private nuisance. See Taunus Corp. v. City of N.Y., 279 F. Supp. 2d 305, 312 (S.D.N.Y. 2003) ("When a claim of nuisance is based on negligent conduct, the plaintiff will have to prove all the elements of negligence . . . ."). Accordingly, Defendants' motion for summary judgment as to Plaintiff's nuisance claim is also GRANTED.

**B. Plaintiff's Cross-Motion for Summary Judgment**

**1. Timeliness**

On July 28, 2019, the Court ordered the parties to file any motions for summary judgment by December 2, 2019. Defendant filed a motion for summary judgment on November 27, 2019. ECF No. 48. The Court granted Plaintiff an extension of time to oppose Defendants' motion, and Plaintiff filed a cross-motion for summary judgment with its opposition on January 11, 2020. As a threshold matter, Defendants argue that Plaintiff's cross-motion for summary judgment is untimely because it was filed after the date on which dispositive motions were due. The failure to abide by the Court's scheduling order without showing good cause is sufficient ground upon which to deny a motion for summary judgment. See NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 150 (S.D.N.Y. 2003). Therefore, the Court would act within its authority to deny Plaintiff's motion on that basis. Even so, the Court finds that it is in the interests of justice and judicial economy to consider Plaintiff's motion for summary judgment on the merits because the motion has been fully briefed. The Court is positioned to address the issues presented and no party would be prejudiced by the Court's decision to resolve Plaintiff's cross-motion for summary judgment in addition to Defendants' motion for summary judgment.

**2. Negligence**

Plaintiff moves for summary judgment solely on the basis of its *res ipsa loquitur* argument. New York courts have repeatedly cautioned that only "in the rarest of *res ipsa loquitur* cases may a plaintiff win summary judgment or a directed verdict." Mallette, 778 F. Supp. 2d at 290 (collecting cases). As noted, the doctrine permits a plaintiff to establish a *prima facie* case of negligence without proving the elements usually necessary to state a negligence claim. Flowers

v. Delta Airlines, Inc., 00-cv-783 (ILG), 2001 WL 1590511, at *3 (E.D.N.Y. Nov. 1, 2001). Satisfying the elements of the *res ipsa loquitur* inquiry does not "ordinarily or automatically entitle the plaintiff to summary judgment, even if the plaintiff's circumstantial evidence is unrefuted." Moreion v. Rais Construction Company, 7 N.Y.3d 203, 209 (2006). Instead, when a Plaintiff successfully argues for the application of *res ipsa loquitur*, a jury may infer that a defendant was negligent. In order to prevail on a motion for summary judgment, the plaintiff must introduce uncontroverted evidence establishing entitlement to judgment as a matter of law.

For the reasons above, Plaintiff has not established that *res ipsa loquitur* applies in this case to create an inference of Defendants' negligence. It follows, therefore, that Plaintiff has not adduced sufficient evidence to establish Defendants' negligence as a matter of law based on that inference. For one example, Defendants' expert opined that the rupture was caused by a defective design or manufacture of the flexible line plastic nut, which did not have sufficient strength over an extended period of time to safely resist the water pressure and normally expected installation side-load forces. See ECF No. 55-7 at 3. On this basis, a jury could conclude from the evidence in the record that the ruptured line was caused not by Defendants' negligence, but by a design or manufacturing defect.

Accordingly, Plaintiff's cross-motion for summary judgment is DENIED.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. Plaintiff's cross-motion is DENIED. The Clerk of the Court is respectfully directed to terminate this case and any motions pending therein.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:  September 28, 2020
        New York, New York